24-9521 UHS of Delaware v. Occupational Health and Safety Review Commission. Court, good morning. I'm Kim Adams here on behalf of Petitioner UHS of Delaware. I kindly request four-ish minutes for a little rebuttal. Is that acceptable to the court? We'll do our best, yeah. Thank you very much. So I'm sort of part two, same facility, sort of very different issue, the single employer doctrine under the commission. We have brought briefing before this court to suggest that the ALJ, Judge Helms, has erred in finding that the secretary met its burden as to substantial evidence with regards to each of the three prongs of the single employer test. Those are that the facility, excuse me, that the entities share a common worksite, two, have interrelated and integrated operations, and three, share a common president, management, supervision, or ownership. Let me ask you a question that nobody appears to disagree at council table, and that is why we should adopt this test or apply this test. This is a commission test. As you all know, because I think you all pointed it out, the Supreme Court in Local Bright recently did away with Chevron deference. This is an interpretation of a statutory term, employer. The 11th Circuit in UHS Delaware versus Secretary of Labor in June dropped a conspicuous footnote, one, that said, that pointed this out and said, well, nobody's disagreeing, so we're just going to apply this test as if it's a real thing. But, you know, we are the arbiter of the law, and why do we apply this commission-created test in light of the fact that we no longer defer to the commission in interpreting statutory terms? Sure. So I think there's no doubt that the disappearance of Chevron deference is of tremendous benefit to the petitioner here today. I think because of the timing and the way that the briefing went, the test for single employer, the only one that we're aware of, is sort of the existing one under the Loretta Oswego and Fray Carr and other matters. Well, of course, in agency law, we deal with whether or not someone is an employer and an independent contractor all the time. And there, I think most of the states adopt, and I think the restatement adopts a test based on control, which would seem to posit the issue in terms of whether or not the UHS exerts control over UHS Delaware. And that certainly would not be a favorable test for you if we adopt the more common test for determining whether someone is an employer. I would agree with that, although I can't speak to that in any detail here before you this morning. All right. If the June 18th case from the 11th Circuit was a 10th Circuit case, would it dispose of this issue? Are you trying to distinguish the 11th Circuit case in some fashion? We are. I mean, I would say the 11th Circuit case of Suncoast has- He's not talking about Suncoast. Oh, okay. I'm talking about the June 18th decision. Chevron deference in the removal of- No, he's not talking about- it's UHS Delaware versus Secretary of Labor, right? Yes. Oh, okay. I don't know if I can speak to that here today. That's the case that I think Judge Bacharach was talking about the footnote. Is that correct, Judge Bacharach? That's right. Oh, okay. I don't know- It's not a test. I got you. I don't know if I have anything to say about that today. Well, the court found single employer. Yes. And a lot of the parties are the same and the structure and the hierarchy are the same. Yes. So I'm asking you, unless the 11th Circuit got it wrong, and please tell me how, unless the 11th Circuit got it wrong, is this case dispositive if we were to follow it? Well, I think the issue that we bring before you is that this is not just a circuit-by-circuit situation, but a facility-by-facility situation. This is not a true parent subsidiary situation. Cedar Springs Hospital is its own state entity, regulated in Colorado, licensed to practice medicine. It has a management agreement with UHS of Delaware. It does not necessarily have a common parent. It does not go directly to UHS. Cedar Springs Hospital is owned by Psychiatric Hospitals Association or something along those lines. So it is so quickly assumed that we have a parent subsidiary situation here, where I think we have argued in this briefing and another briefing that this relationship is unique. I don't think there's any doubt about that. Well, it's not unique. I'm not trying to pick on you, but that's exactly the scenario that exists in that recent 11th Circuit opinion. Psychiatric Solutions was also a subsidiary of UHS and between UHS and UHS Delaware, and the court did find that the third element was satisfied. But let me ask you a separate question. Why does it really matter whether or not UHS was the ultimate parent instead of a direct parent, that there is a Psychiatric Solutions between Cedar Springs and UHS? Isn't that a technicality? The reality is that both for Cedar Springs and UHS Delaware, the ultimate parent was still UHS. It just so happens that for Cedar Springs, you have an intervening company, Psychiatric Solutions. I just don't get why, as a parent, why should that matter? Well, it's a distinction, I think, that is born through the case law, that in most of these cases where a single employer is found, as cited in our brief, it is generally a situation where the finding and the analysis is, are each of these entities owned directly by that person above you? Is it a distinction without a difference, Your Honor? I don't know. I can't really speak to whether or not there is really no evidence in this record as to the difference between the rules or the oversight of Psychiatric Hospital Association over Cedar Springs and whether they tinker or vary with sort of the overall UHS goals for the facilities that it has relationships with. The elephant in the room, as our briefing shows and as our argument brings, is this unique concept that the CEO of Cedar Springs Hospital and the CFO of Cedar Springs Hospital are UHS of Delaware employees. It's unique. I don't think it's something that this court or many courts see very often. There are good reasons for it. But I think the secretary and the ALJ have just allowed that to kind of permeate through all three of the prongs of the single employer test. Where were those guys designated to work? They worked in office space that was not inside any of the six patient wings. Okay. So you told me where they did. Where were they supposed to work? Were they supposed to work in Delaware? No. They were supposed to work in Colorado Springs.  Yes, sir. And so if the element is do they share a work space and you are an employee of let's say Bob Baccarat, the Bob Baccarat Company, and my employee is Judge Timkovich. And I say, Judge Timkovich, you work in Cedar Springs Hospital. Well, so his work site is in Cedar Springs Hospital. He is an employee. Why doesn't that mean that the entity shares a work space with Cedar Springs? Because part of my – some of my employees, in fact, the main employee, the CEO, is designated to work at Cedar Springs. So the company's work site is in a really very real sense Cedar Springs. UHS of Delaware's work site in terms of where its executives and managers do their work and reside is King of Prussia, Pennsylvania. These two gentlemen, Mr. Franklin and Mr. Askew, are – effectively their only executive function is to oversee Cedar Springs Hospital. Why don't we hear what their executive functions are with UHS Delaware? Because what I'm asking is, is that the correct way of looking at it? Whether or not they're headquarters, they're a place of incorporation, it's in Prussia, Pennsylvania. I get your argument. I mean, we all do. You expressed it very well in your brief. But is that really the right way of looking at it is what I'm saying. Isn't a company's work site in a very real sense where its employees are designated to work? And if some of its employees are designated to work in the Byron White Courthouse, isn't the work site of, let's say, my hypothetical, my Bob Baccarat company, I've always wanted my own company. Why isn't my work site in a very real sense the Byron White Courthouse if I said designate some of my employees to work in this building? Because that would be the only factor to suggest that UHS of Delaware has a work site at Cedar Springs Hospital. It's the fact that two of its several hundred employees are in Colorado Springs. Got it. When the decision makers are by no means for UHS of Delaware located in that site. They aren't just any employees. These employees run Cedar Springs. They do. And are responsible for its compliance with the labor laws. They do. But they do not run or even have a seat at the table at UHS of Delaware in King of Prussia, Pennsylvania. That's, I think, sort of where we're going with that argument. If they're unable or unwilling to comply with federal labor law, UHS of Delaware is going to fire them.  Perhaps. But in an environment like this, you know, I've thought about this a bit. Whose neck is on the line, more or less, if things go poorly at Cedar Springs Hospital? Well, for the most part, it's Cedar Springs Hospital. They own the facility. They're the licensed practitioner. Their doctors, their medical team are people that are licensed. They're employees of Cedar Springs Hospital. And they're licensed to practice medicine in the state of Colorado. If the Joint Commission or other regulatory organizations or the State Department of Behavioral Health has a real problem with what's going on at Cedar Springs, as it relates to an array of issues, including workplace violence, potentially, that's going to be a Cedar Springs problem. Because they're the owner and operator of the facility. And by virtue of that management agreement, UHS of Delaware is effectively a management consultant. They provide a lot of assistance in helping Cedar Springs Hospital complete its mission of providing psychiatric care to patients. I know you wanted to save some rebuttal time. I did. Thank you, Your Honor. Good morning again, Your Honors. My name is Leanne Shriver, and I represent the Secretary of Labor. As Your Honors heard in the prior related oral argument, this case concerns an inpatient behavioral facility. And that facility is controlled by not one company, but two companies that exercised control over the working conditions at that facility. And the ALJ correctly found that there is a single employer relationship between UHS of Delaware and Cedar Springs for the purposes of the OSH Act. To address, Judge Bacharach, some of your questions. While no parties have raised the question of whether the three-pronged test should be applied, I do want to note that I don't think that Loper-Bright has any impact here, because the Supreme Court held in a case called Martin v. Osherick that if deference is owed to an agency, it is to the Secretary of Labor, not to the Commission. And so any courts that have adopted the Commission's three-pronged test have not done so on a deference basis. And so that overturning of Chevron doesn't apply to that line of case law. So they adopted what the Secretary of Labor said, but not because of deference? If a court adopted the Commission's test, it was not on the basis of deference, because deference is not due or never was due to the Commission. It's because they thought it was a good test. Yeah, which is correct, because I think to distinguish it from the Darden factors, which you highlighted, that's about whether one company directly employs an individual, usually. And what the single employer test is getting at is whether two companies are operating together in a way that means they're both controlling safety and health at the workplace in a manner that means they are working together and OSHA can cite them as one. And it's based on that very specific situation. That's why you're looking at do they both have employees on site? Do they both control workplace safety and health? And are they both providing supervision or have common management? It's specifically framed to the question at issue here, so I think it is the most appropriate test. And you're saying the Supreme Court specifically adopted that test? No, Your Honor. Sorry. The Martin v. Osherick is the case that says that when Chevron was good law, deference was owed to the Secretary of Labor. But I think that the case law indicates that it is courts adopting the Commission's three-part test, and that wasn't on the basis of deference. Good. It's because they thought it was persuasive. Yes, Your Honor. Legal argument. Yes. So for the single employer test here, as opposing counsel noted, is a three-pronged test that requires a showing of common worksite, that the two companies were integrated and interrelated, particularly with respect to occupational safety and health, and they had common management, ownership, or supervision. And the ALJ correctly found that all three prongs indicate a single employer relationship here. With regard to the common worksite, that fact is established by there being employees of both companies on site. Mutual access to the site at hazard is not a precondition of a common worksite finding, but it is present here and supports that finding, because both parties stipulated to the fact that their employees were exposed to the hazard of workplace violence, and the CFO testified to the fact that he was regularly on patient units, walking rounds, and was involved in those spaces, not merely in the administrative wing of the facility. The fact that these two companies have separate headquarters is not dispositive. It is the test of a common worksite, not a common business address. With regard to the second prong, these two companies were very integrated and interrelated, including for occupational safety and health reasons, and there is a wealth of evidence to support that, and I will highlight just a few of those facts. The CEO and CFO of the facility were indeed UHS of Delaware employees, and they provided daily supervision of all of the director-level positions at Cedar Springs who were filled by Cedar Springs employees. That included people who were making medical decisions, such as the medical director and the director of nursing, and those in charge of safety at the workplace, such as the director of risk management. They also sat on the boards and committees that set hospital policies, such as the board of governors. UHS of Delaware also regularly sent employees to the worksite in order to evaluate how that facility was doing, provide recommendations. They had regular meetings and touch bases with employees who were at Cedar Springs. There was definitely supervision happening here, and additionally, these two companies were interrelated for administrative matters because UHS of Delaware handled the payroll, the benefits, the workers' compensation. They had approval of any expenditure over $5,000. This is not an arm's-length relationship, and contrary to UHS of Delaware's argument, these are not independent operations for unrelated purposes. And finally, with respect to common management, supervision, and ownership, these two companies had the same ultimate corporate parent. The employees of UHS of Delaware daily supervised the employees of Cedar Springs, and the CEO and CFO both sat on the board of governors that set policies. The most analogous case law available to this court on this issue are the two other court of appeals cases involving UHS of Delaware in the Third and Eleventh Circuit with very similar facts. This court must obviously rely on the record before it in this case, but those are the most analogous and persuasive cases, not the Loretta Waswego cases UHS of Delaware contends. If there are no questions from the court, the secretary asks that this court affirm the ALJ's finding on the single-employer issue. Thank you, counsel. Mr. Adams, you had some rebuttals? I'm sorry, did you have any questions? Can I just ask one question? Could you respond to your opponent's argument about the common ownership, the fact that Psychiatric Solutions is an intermediary between UHS and Cedar Springs? Does that make a difference? Not that I can think of, Your Honor, and I think even if this court found that it did for some reason have an impact, the other evidence here supports the common supervision element that is sufficient to meet the problem. Thank you. Briefly, may it please the court. I'm just going to raise one, I think, important point with regards to what we're hearing, and we were talking about earlier, is safety in workplace violence and reducing it. So I think the court would be appropriate to examine, how was it that Cedar Springs Hospital and UHS of Delaware addressed safety? And I think one of the things that's lacking here is under the Loretta Waswego decision, there was a notation that there needs to be a showing that the consultant or the larger outside company has some level of control over safety at the facility. And I think the facts here show that while there was a lot of support by UHS of Delaware, who brings a lot of people with expertise around the nation, you know, thought leaders in psychiatric care, ultimately the single seminal document that the facility is going to use and modify and follow to try to reduce workplace violence is the Workplace Violence Prevention Program. And it's clear from the record in this matter that that was the responsibility, the development and the ownership of Christine Cohn, who was effectively Cedar Springs Hospital's Director of Safety. She had the ability to modify it. She had the ability to scrap it and write her own. She did get input from UHS of Delaware, but the feeling is that she knows her facility better than anybody else. She knows what the nurse's station is supplying. Ms. Shriver's argument, well, she reports to the CEO, right? The CEO, isn't he ultimately responsible for safety at the facility? And so the government's argument is a UHS employee is ultimately in charge of safety at Cedar Springs. He's the CEO. That's what the 11th Circuit held. And of course, he's the CEO, so that's not something any CEO is going to step away from. But I think when you look at sort of like who had control over determining exactly what the nurse's station should look like, how should sort of staffing for acute patients be done? Well, the CEO delegates that to the Director of Safety, right? He does, but she is an employee of Cedar Springs Hospital. That document is a copyrighted document at Cedar Springs Hospital, and she has the ability to control it and provide input. She knows the facility better than anybody else. Mr. Franklin, the CEO, he didn't interact with patients. I think that's clear from the record. One of the things our briefing recognizes is that he's there on sort of the business side of things, if you will. He's going to defer to her on the interaction of patients and what's best for the facility as terms of how safety goes. Thank you. Appreciate your arguments. It's helpful.